IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MOXIEBRIDGE, LLC, and CONSTRUCT CAPITAL, LLC d/b/a/ PERMA-PIER FOUNDATION REPAIR<br><br>*Plaintiffs*<br><br>v.<br><br>LARX ADVISORS, INC.<br><br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. _____<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, MoxieBridge, LLC ("MoxieBridge") and Construct Capital, LLC d/b/a Perma-Pier Foundation Repair ("Construct" or "Perma-Pier") (MoxieBridge and Construct are sometimes collectively referred to herein as "Plaintiffs"), file this Original Complaint, complaining of Defendant, Larx Advisors, Inc. ("Larx" or "Defendant"), and in support thereof, would respectfully show the Court as follows:

### I.   JURISDICTION AND VENUE

1. The agreement between the parties stipulates that the United States Federal Court sitting in the County of Dallas shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the agreement between the parties and any matter arising from said agreement.

### II.   PARTIES

2. Plaintiff MoxieBridge is an entity formed under the laws of the State of Texas with its principal place of business located at 5710 Lyndon B Johnson Fwy, Suite 420, Dallas, TX 75240.

3. Plaintiff Construct is an entity formed under the laws of the State of Texas with its principal place of business located in Tarrant County, Texas.

4. Defendant, Larx, is a Texas corporation formed under the laws of the State of Texas with its principal place of business located at 2600 Network Blvd., Suite 290, Frisco, Texas 75034. Larx can be served through its registered agent: Lone Star Registered Agent, LLC, 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

## III.   FACTS

**Background of the Relationship Between the Parties.**

5. Defendant, Larx, was started in 2017 by Erik Toth ("Toth") and Todd Perry ("Perry"). Larx holds itself out to be a company that specializes in assisting other companies with turnaround management, restructuring, merger integration, interim leadership, and revenue enhancement. Specifically, Larx holds itself out to the general public as being experts in these areas.

6. Plaintiff, MoxieBridge, is an investment group specializing in commercial real estate assets. Plaintiff, Perma-Pier, is a foundation repair company based in Arlington, Texas that specializes in residential and commercial repair projects. Perma-Pier is an assumed named for Construct Capital, LLC.

7. In or around October of 2018, Perma-Pier had fallen into serious financial strain. The financial strain was to such extent that Perma-Pier was forced to seek outside investment help to keep the company from going under. Accordingly, in or around June of 2019, Perma-Pier reached an agreement whereby MoxieBridge agreed to invest in Perma-Pier in exchange for equity ownership. As part of this agreement, MoxieBridge agreed to assist Perma-Pier with installing new management to rehabilitate the company.

8. As part of these efforts, in or around June of 2019, MoxieBridge was introduced by a mutual acquaintance to Toth (Larx's Chief Executive Officer and Managing Partner). During MoxieBridge's initial conversations with Toth, he represented to MoxieBridge and Perma-Pier that Larx was an expert in turnaround management and revenue enhancement. During this consultation, Toth also represented that Larx would be able to assist MoxieBridge by providing Larx's services to Perma-Pier.

**MoxieBridge Reaches an Agreement with Larx to Provide Services to Perma-Pier.**

9. In or around June 14, 2018, Larx entered into an agreement with MoxieBridge to provide financial advisory services and interim management services to Perma-Pier (the "Agreement"). The primary responsibility of Larx under the Agreement was to assist with the re-structuring of Perma-Pier, identify cost cutting measures, and develop a financial forecast model for Perma-Pier that was to be provided to MoxieBridge. It was understood by MoxieBridge, Perma-Pier, and Larx that the development of a financial forecast model was the initial most pressing primary directive of Larx.

10. As part of the Agreement, Larx also agreed to provide Toth to Perma-Pier to act in an advisory role as an employee or officer to advise Perma-Pier or serve as Perma-Pier's Interim Chief Financial Officer. In addition, Larx agreed to provide one or more Larx employees, including Andrew Middleton ("Middleton"). Middleton was to help manage working capital and assist with data driven components as part of Larx's assessment of Perma-Pier.

11. As part of the Agreement, Perma-Pier was to pay Larx a monthly advisory fee. The advisory fee was to be capped at $22,000 per week for the work of Toth ($550/hour capped at 40 hours/week) and $9,450 per week for Middleton ($210/hour capped at 45 hours/week). These fees were to be paid directly by Perma-Pier to Larx. Almost immediately after the Agreement was entered into, Larx started working with Perma-Pier and becoming involved in Perma-Pier's

business operations. Additionally, Larx immediately thereafter started billing Perma-Pier for Larx's services.

**Larx Provides its "Services" to Perma-Pier.**

12. Over the next four months, Larx went to work on providing its services to Perma-Pier. A major part of these services was Larx's development of a financial forecast model of Perma-Pier's business. One of the primary individuals from Larx that was responsible for preparing the financial forecast model was Middleton. After several months of Larx's developing the financial forecast model, in August 2019, Larx finally indicated that the financial forecast model was complete. Ultimately, Larx's financial forecast model represented that Perma-Pier would have approximately **$4,000,000.00 of positive cash flow** from September 1, 2019 to December 25, 2019. This information was provided by Larx to both Perma-Pier and MoxieBridge. Both MoxieBridge and Perma-Pier relied on this information in determining and planning for what Perma-Pier's future capital needs would be.

13. During these first four months, Larx was paid approximately **$750,000.00** for their services by Perma-Pier, a large portion of these fees included the cost of the development of Larx's financial forecast model. In October 2019, MoxieBridge and Perma-Pier discovered for the first time that Larx's financial forecast model was not only incorrect, but the model itself was wholly defective. In fact, MoxieBridge and Perma-Pier soon learned that Perma-Pier was actually projected to have approximately **$3,000,000.00 of negative cash flow** from September 1, 2019 to December 25, 2019. Ultimately, this resulted in MoxieBridge unexpectedly having to put another $2,000,000.00 worth of capital into Perma-Pier.

14. Upon this information being brought to Larx's attention by MoxieBridge and Perma-Pier, Larx fired Middleton. Thereafter, Larx had Toth and his partner Todd Perry ("Perry") attempted to re-build the financial forecast model and/or correct the faulty model that was

previously provided by Larx to MoxieBridge and Perma-Pier. However, it was too late as both MoxieBridge and Perma-Pier had already suffered harm as a result of Larx's actions.

15. Now, Larx is demanding that Perma-Pier pay another $200,000.00. Larx is engaging in the course of conduct in spite of the fact that Perma-Pier had already previously paid Larx well in excess of the actual value of the services that Larx had actually provided and were received by Perma-Pier and MoxieBridge. Plaintiffs do not believe that Larx is owed any additional money from MoxieBridge or Perma-Pier because Larx breached the terms of the Agreement and/or in the alternative was negligent which proximately caused financial damages to both MoxieBridge and Perma-Pier. As a result, MoxieBridge and Perma-Pier now sue.

## IV.   CAUSES OF ACTION

16. <u>Alternative Pleadings</u>.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.

**A.   Count One:**

**Negligence**

17. All paragraphs above and below are adopted by reference as if fully stated herein.

18. The acts and omissions of Larx, as complained of herein, constitute negligence. Larx owed a duty to Plaintiffs and failed to use ordinary care by various acts or omissions described herein. More particularly, Larx failed to use ordinary care in developing a financial forecast model of Perma-Pier's business and in advising Perma-Pier and Moxie-Bridge that Perma-Pier would have $4,000,000.00 of positive cash flow from September 1, 2019 to December 25, 2019 when in reality Perma-Pier was actually projected to have $3,000,000.00 of negative cash flow from September 1, 2019 to December 25, 2019.  Both Perma-Pier and MoxieBridge relied on this information in determining and planning for what Perma-Pier's future capital needs would be. As

a direct and proximate result of such negligence, Plaintiffs has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiffs now sue.

**B.     Count Two:**

   **Gross Negligence**

19.     All paragraphs above and below are adopted by reference as if fully stated herein.

20.     Larx's acts and omissions involved an extreme degree of risk. Larx had actual, subjective awareness of the degree of risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, or welfare of Plaintiffs. The acts and omissions of Larx, as complained of herein, gross constitute negligence. As a direct and proximate result of such gross negligence, Plaintiffs has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiffs now sue.

**C.     Count Three:**

   **Breach of Contract**

21.     All paragraphs above and below are adopted by reference as if fully stated herein.

22.     The acts and omissions of Larx complained of herein constitute breach of contract. More particularly, Larx has breached the Agreement by, among other things: (1) failing, in whole or in part, to provide the services promised under the Agreement; (2) failing, in whole or in part, to provide the quality of the services promised under the Agreement; and (3) charging excessive fees for defective services and/or services that were never provided. As a natural and probable result of, or as a proximate result of Larx's breach of contract, Plaintiffs have suffered actual damages. Plaintiffs do hereby, pursuant to these breaches of contract, sue and assert their claims against Larx for all such damages. Plaintiffs have been damaged in an amount within the jurisdictional limits of this Court.

## V. RELIEF REQUESTED

23. *Actual Damages.* As a result of the wrongful acts of Defendant, Plaintiffs have suffered injuries and actual damages in a sum which is within the minimal jurisdictional limits of this Court, and Plaintiffs seek to recover any and all actual damages from Defendant.

24. *Exemplary/Punitive Damages.* The acts and omissions of Defendant complained of herein by Plaintiffs were, in whole or in part, committed intentionally, willfully, fraudulently and/or with malice by Defendant. Accordingly, in addition to any other relief, Plaintiffs seek the recovery of exemplary damages in an amount in excess of this Court's jurisdictional limits as to be determined by the trier of fact in accordance with the applicable provisions of Chapter 41 of the Texas Civil Practice and Remedies Code.

25. *Attorneys' Fees and Interest.* Plaintiffs have retained the law firm of Hill Gilstrap, P.C. to represent them in this action and have agreed to pay the firm's reasonable and necessary attorneys' fees. Plaintiffs seek the recovery for their reasonable attorneys' fees incurred in bringing this suit and in all appeals of this suit as provided by law, in equity, and/or pursuant to section 38.001 of the Texas Civil Practice and Remedies Code. Additionally, Plaintiffs seek to recover pre- and post-judgment interest as allowed by law.

## VI. CONDITIONS PRECEDENT

26. All conditions precedent have been performed, have occurred or have been waived.

### Prayer

WHEREFORE, premises considered, Plaintiffs prays that Defendant be cited to appear and answer herein and that on final trial, Plaintiffs have:

1. Judgment against Defendant for a sum within the jurisdictional limits of the Court;

2. Plaintiffs' actual damages to the extent permitted by law;

3. Exemplary and/or punitive damages to the extent permitted by law and/or equity

4. Plaintiffs' reasonable and necessary attorney's fees, for both the trial and appeal of this action, in a sum to be determined by the trier of fact;

5. Pre-judgment and post-judgment interest as provided by law;

6. Costs of Court; and

7. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *Frank Hill*
Frank Hill                        09632000
fh@hillgilstrap.com

**HILL GILSTRAP, P.C.**
1400 West Abram Street
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 (fax)

**ATTORNEY FOR PLAINTIFFS**